IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

```
CAROLYN S. MCDONALD            )
                               )
v.                             )   No. 3:05-0108
                               )   Judge Wiseman/Brown
JO ANNE B. BARNHART, Commissioner )
of Social Security             )
```

To:  The Honorable Thomas A. Wiseman, Jr., Senior Judge

**REPORT AND RECOMMENDATION**

This is a civil action filed pursuant to 42 U.S.C. §405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying plaintiff disability insurance benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"), as amended. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 12), to which defendant has responded (Docket Entry No. 13). For the reasons stated below, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be **DENIED**, and that the decision of the Commissioner be **AFFIRMED**.

I.  INTRODUCTION

Plaintiff filed her DIB application in January 2002 (Tr. 47), alleging onset of disability as of December 9, 2001

1

(Tr. 58), a date that was subsequently amended to January 22, 2002 (Tr. 108). The alleged disabling impairments are lumbar spinal stenosis and herniated discs (Tr. 58). Plaintiff's claim was denied initially and upon reconsideration (Tr. 29, 34), whereupon plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ hearing was held on April 14, 2004, when plaintiff appeared with counsel and gave testimony, as did an impartial vocational expert ("VE") (Tr. 159-177). On July 28, 2004, the ALJ issued a written decision denying plaintiff's claim (Tr. 11-16). The ALJ made the following findings:

1. The claimant meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's spinal stenosis is a "severe" impairment, based upon the requirements in the Regulations (20 CFR § 404.1520(c)).

4. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the following residual functional capacity: to perform a full range of medium work with frequent postural movement limitations.

7. The claimant's past relevant work as catering and restaurant manager did not require the performance of work-related activities precluded by her residual

functional capacity (20 CFR § 404.1565).

8.  The claimant's medically determinable spinal stenosis does not prevent the claimant from performing her past relevant work.

9.  The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 404.1520(f)).

(Tr. 15).

On December 6, 2004, the Appeals Council denied plaintiff's request for review of the decision of the ALJ (Tr. 4-6), thereby rendering that decision the final decision of the Commissioner.  This civil action was thereafter timely filed, and the Court has jurisdiction.  42 U.S.C. § 405(g).  If the Commissioner's findings are supported by substantial evidence, based on the record as a whole, then these findings are conclusive.  Id.

## II.  REVIEW OF THE RECORD[1]

Plaintiff was born on July 24, 1944 and was 60 years old at the time of the ALJ decision (Tr. 16, 47).  She has a high school education and one year of college (Tr. 64).  Her last regular full-time work was as an assistant banquet and catering manager at the Bluff View Art District in Chattanooga

---

[1]This review is taken from defendant's brief (Docket Entry No. 13, pp. 2-5).  It adequately summarizes the record, while more detailed references as relevant to plaintiff's legal arguments are included in the undersigned's conclusions.

3

(Tr. 164). She said that she could not do her regular duties after December 2001 but she worked there at a reduced activity level in January 2002 (Tr. 94, 165).

Plaintiff began experiencing occasional pain in her lower abdomen and right leg in the fall of 2001 and it became worse until she went to the emergency room in December 2001 (Tr. 168). She was admitted on December 9, 2001, with intractable pain in the hip and groin (Tr. 112). She denied having back pain (Tr. 115). A MRI scan of the lumbar region on December 10th showed minimal degenerative disc disease, a "small" disc herniation at T11-12 that "mildly" compressed the anterior aspect of the spinal cord, a "tiny" disc herniation at L4-5 with the disc abutting but not displacing the L4 nerve root, and no stenosis of the spinal canal or of the foramina through which nerve roots pass (Tr. 119). A MRI scan of the lower extremities showed that the hip joints were intact with no degenerative changes, bony lesions, or effusion (Tr. 120). A CT scan of the abdomen revealed no abnormalities and a CT scan of the pelvic area showed nothing remarkable (Tr. 124-125).

Plaintiff received a nerve root block at L4 on December 11th and it relieved severe right leg pain (Tr. 126). On the following day, she received a nerve root block at L3 but it did not relieve right groin pain. She continued to have relief from the right leg pain (Tr. 121). In a discharge note on December

4

12th, Dr. Magill said that plaintiff had much improved hip pain, degenerative disc disease at L2-3 and L3-4, a "small" disc herniation at T11-12 with mild nerve compression, and a "tiny" disc herniation at L4-5 with disc material abutting but not significantly displacing the L4 nerve root. Lortab and Celebrex were prescribed (Tr. 110-111).

Dr. Magill said on December 21st that plaintiff was doing well with physical therapy, had good range of motion of the hip, and no pain. She could walk with a barely perceptible limp. Straight leg raising (SLR) was negative. He also said that she should not bend, stoop, or lift, and should continue with physical therapy (Tr. 130). In January 2002, Dr. Magill noted that she complained of right leg pain and could not work 10 to 12 hours on her feet. She said that she could not have her hours restricted or she would get fired. He said that a surgery consult should be obtained (Tr. 130).

On April 2, 2002, Dr. Lowery, D.O., said that plaintiff experienced pain in late March while lifting six bales of hay. Until then she had been "feeling great" and was using very little pain medication (Tr. 142). She appeared in severe discomfort. Two days later, he stated that it is time to obtain a surgical evaluation from Dr. Pearce (Tr. 143). Dr. Pearce saw plaintiff on May 2, 2002, when he said she was doing fairly well. Straight leg raising was negative. He encouraged her to become more

5

active but to avoid repetitive bending and lifting. He said that he would not recommend surgery (Tr. 141).

A residual functional capacity (RFC) assessment by non-examining state agency physician Dr. Bell on April 14, 2002 stated that plaintiff could lift 25 pounds frequently and 50 pounds occasionally. In addition, she could sit as well as stand and/or walk 6 hours in an 8-hour day (Tr. 131). A similar RFC assessment was provided by another such physician, Dr. Patikas, on August 10, 2002, who also found that plaintiff's complaints of pain were not entirely credible and that her alleged limitations were not consistent with the medical evidence in the record (Tr. 153, 156). Dr. Patikas further recognized that plaintiff had a limitation against frequent postural activities.

At the hearing, plaintiff said she can drive but cannot stand or walk for long. She said her right leg is numb from the knee down (Tr. 171). Moreover, she explained that she "pushed" bales of hay on her father's farm because the cows had to be fed and he was in the hospital (Tr. 172). She stated that she has not considered surgery because her insurance expired and she discontinued prescription medication and physical therapy for the same reason (Tr. 170, 173). She does light housekeeping for her father. She also said that she has to lie down 6 to 7 times each day for about 20-30 minutes due to pain.

The vocational expert (VE) described the work of

banquet and catering manager as skilled light work. He stated that her particular job, as she described it, involved lifting up to 50 pounds, and, therefore, was medium level work (Tr. 167). Her other past work in the restaurant business was either skilled light work or skilled medium work. Id. The ALJ asked the VE to assume that plaintiff could lift 25 pounds frequently and 50 pounds occasionally and sit, stand, and walk for 6 hours in an 8-hour day, with no other limitations (Tr. 175). The VE testified that the Plaintiff would be able to do all of her past work. Id.

### III. CONCLUSIONS OF LAW

#### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. Jones v. Secretary, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. Landsaw v. Secretary, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." Her v. Commissioner, 203 F.3d 388, 389 (6th Cir. 1999)(citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

7

It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." Bell v. Commissioner, 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. Her, 203 F.3d at 389 (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). However, if the record was not considered as a whole, the Commissioner's conclusion is undermined. Hurst v. Secretary, 753 F.2d 517, 519 (6th Cir. 1985).

      B.    Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process, as follows:

(1)   If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
(2)   If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
(3)   If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of

8

the "listed" impairments[2] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.
(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations); by showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.
(5) Once the claimant establishes a prima facie case of disability, it becomes the Commissioner's burden to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid can not be used to direct a conclusion, but only as a guide to the disability determination. Id. In such cases where the grids do not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to

---

[2]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, Appendix 1.

9

perform specific jobs, which is typically obtained through vocational expert (VE) testimony. See Varley v. Secretary, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity (RFC) for purposes of the analysis required at steps four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement of Errors

Plaintiff first alleges that her spinal condition meets the criteria of § 1.04 of the Listings. She further alleges that even if her condition is not presumptively disabling, the objective medical proof would rule out her ability to perform her past relevant work at the medium level, contrary to the ALJ's step four finding. As explained below, the undersigned concludes that while the ALJ's finding of no listing-level impairment is substantially supported, his finding of plaintiff's ability to perform her past relevant work is undermined by his failure to present a complete hypothetical to the VE in ascertaining the requirements of plaintiff's past jobs. Nonetheless, the undersigned concludes that there is other substantial evidence on this record to sustain the ALJ's finding of plaintiff's ability, despite her impairments, to return to her past relevant work as a

10

restaurant manager.

While plaintiff does not specify a subsection of Listing 1.04 which she feels has been met, it appears that subsection (A) of that listing is the focus of her argument. Thus, the pertinent language from § 1.04 is as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

While the objective medical evidence of plaintiff's spinal impairments is impressive in its documentation of disc herniation, degenerative arthritic changes, and radiculopathy, there is simply not substantial (if any) evidence of nerve root compression, limitation of spinal range of motion, motor or sensory loss, or positive findings on straight-leg raise testing in both sitting and supine positions. Plaintiff was subjected to a battery of radiographic tests during a hospital admission in December 2001 (Tr. 110-128), the most impressive of which yielded impressions of "mild degenerative disc disease and mild L2-3 and

11

L3-4 facet osteoarthritis throughout the lumbar spine"; "small central left sided T11-12 disc herniation with mild associated neural compression"; and "tiny right far lateral L4-5 disc herniation with disc material abutting but not significantly displacing the exiting right L4 nerve root." (Tr. 119). However, leaving aside the question of whether a nerve root was compromised or compressed for purposes of § 1.04, plaintiff's examination by the admitting physician, Dr. Wharton, revealed movement of both upper and lower extremities without obvious focal weakness, good straight leg raise on both sides, and no reflex loss (Tr. 116). Consulting orthopedist Dr. Michael Tew examined plaintiff during her hospital stay and noted that she was able to do a straight leg raise by herself, though passive straight leg raising produced groin pain; he further noted normal gait, ability to heel and toe walk normally, normal strength examination in both legs, and normal sensory examination (Tr. 112).

Plaintiff followed up with Dr. Tew on an outpatient basis shortly after her hospital stay, at which visit Dr. Tew observed that plaintiff was walking normally, had a good range of hip motion with no pain, and had a normal neurologic examination in the right leg and negative results on straight leg raise testing (Tr. 130). Largely normal findings on physical examination were also reported in January-May 2002 by plaintiff's

12

treating physicians at Spine Surgery Associates, PC (Tr. 141-151), with the exception of the examination which followed the aggravation of plaintiff's pain while she was attempting to move hay bales (Tr. 142). These normal findings included negative straight leg raise tests, normal motor, sensory and reflex findings, and findings of "full and painless" range of motion in plaintiff's back, hips, knees, and ankles (Tr. 141-151).

In short, while plaintiff clearly has objectively verifiable spinal impairments, those impairments do not meet or equal in severity the criteria of § 1.04.

Plaintiff's secondary argument, that the medical evidence of her impairments and documentation of her pain complaints precludes work at the medium level of exertion, is refuted--and the ALJ's finding on the issue (Tr. 14) is substantiated--by the evidence of plaintiff's ability to move bales of hay and the statements of her treating physicians that, until the exacerbation of her right lower extremity pain which occurred while moving the hay bales, plaintiff was doing quite well with physical therapy and using very little pain medication, had "obviously been feeling great" and had "full and painless" range of motion in her back and lower extremities (Tr. 142-23). Her physicians also stated in May 2002, about a month after the exacerbation, that she was doing "fairly well now with conservative management" and recommended against surgical

13

intervention (Tr. 141). Despite alleging disability beginning on January 30, 2002--the date plaintiff left active employment (Tr. 108)--and continuing through the date of the ALJ's decision in July 2004, the aforementioned office visit in May 2002 is the most recent evidence of plaintiff's medical treatment, and the August 10, 2002 assessment of the non-examining state agency physician, Dr. Patikas, is the last item of medical evidence of any sort in the record. Plaintiff's apparent failure to seek medical treatment after May 2002 is telling, and she simply has not made an adequate showing of any enduring limitations sufficient to disturb the ALJ's finding of her RFC.

However, the undersigned would note that this RFC finding contains a nonexertional limitation to less than frequent postural movements (Tr. 14, 15). This limitation is well established by the medical evidence, specifically the findings of Dr. Tew (Tr. 130), Dr. Richard Pearce of Spine Surgery Associates, PC (Tr. 141), and the non-examining state agency physician, Dr. Patikas (Tr. 154). Plaintiff testified that she continued under this restriction at the time of the hearing (Tr. 170). Unfortunately, in questioning the VE as to the availability of plaintiff's past relevant work, the ALJ presented a hypothetical describing an individual capable of performing medium work, but with **no** postural limitations (Tr. 175). This misstatement of plaintiff's functional limitations to the VE

14

precludes the ALJ's reliance on the VE's testimony to establish plaintiff's ability to perform her past relevant work (Tr. 15). Felisky v. Bowen, 35 F.3d 1027, 1035-36 (6th Cir. 1994)("[F]or a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant.").

While it is not the Commissioner's burden to prove plaintiff's ability to return to past relevant work, it is clear that when the finding of no disability is made at step four of the sequential evaluation process, the Commissioner's decision must correlate the demands of the claimant's past jobs with the particular exertional and nonexertional limitations found to be present. E.g., Nichols v. Comm'r of Soc. Sec., 260 F.Supp.2d 1057, 1074-75 (D. Kan. 2003)(citing Soc. Sec. Rul. 96-8p, 1996 WL 374184). The only vocational testimony received regarding plaintiff's past relevant work merely identified the level of skill required in those jobs and their exertional categorization, both as generally performed in the economy and as plaintiff particularly performed them (Tr. 166-67); the extent to which those jobs would accommodate postural restrictions was not explored at the hearing.

However, despite this failing the undersigned concludes that reversal of the ALJ's decision is not required, as there is evidence in the record which substantially supports his ultimate

15

conclusion that plaintiff can return to her past relevant work. It is well established in this circuit's social security jurisprudence that, inasmuch as judicial review of the Commissioner's findings must be based on the record as a whole, both district courts and the Sixth Circuit itself may look to any evidence in the record, regardless of whether it has been cited by the Commissioner, for substantial evidence in support of the Commissioner's ultimate conclusion. E.g., Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 535 (6th Cir. 2001)(*citing* Walker v. Sec'y of Health & Human Servs., 884 F.2d 241, 245 (6th Cir. 1989)).[3] In the portion of this record developed during the state agency's reconsideration of plaintiff's disability claim, there is a vocational assessment which considers plaintiff's RFC for "medium work limited to frequent posturals" and her past relevant work in the "manager, food service" occupation at the light level of exertion, and which concludes that she is capable of returning to this job with the examiner's comment that "postural limitations per DOT [Dictionary of Occupational Titles] description are well within the claimant's limitations." (Tr.

---

[3]But cf. SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)(stating "a simple but fundamental rule of administrative law" that agency decision in a matter which agency alone is authorized to decide can only be affirmed on the grounds invoked therein). However, the district court in Thompson v. Shalala, 868 F.Supp. 621, 624-25 (S.D.N.Y. 1994), cited Supreme Court authority both pre- and post-Chenery for the proposition that primary authority of an agency does not require remand if the outcome is sufficiently clear, and further noted that "[r]emanding for clarification of the administrative decision where the outcome is foregone would add to expense and delay with no benefit to the administration of justice, and thus run counter to" the requirement of a "just, speedy, and inexpensive" determination under Fed.R.Civ.P. 1.

16

100-101). Attached to this exhibit is a printout of the DOT description and designations for this job, which does appear to indicate that postural activities are not a significant component of job performance (Tr. 102). While the ALJ did not cite this report, the undersigned concludes that its presence in the record is sufficient to establish the required substantial evidence that plaintiff could at least return to her past relevant work as a restaurant manager as that job is generally performed, despite her exertional and postural limitations.

The ALJ's decision being otherwise substantially supported, it appears that the finding of no disability should be affirmed. It is so recommended.

### IV. RECOMMENDATION

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be **DENIED**, and that the decision of the Commissioner be **AFFIRMED**.

Any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this

Report and Recommendation can constitute a waiver of further appeal of this Recommendation. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Cowherd v. Million</u>, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 11th day of October, 2005.

                                                          /s/ Joe B. Brown
                                                        JOE B. BROWN
                                                        United States Magistrate Judge